IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

**FILED**

NOV 1 3 2007

CLERK

07- 5081

| | | |
|---|---|---|
| TECHNOLOGY FUNDING GROUP, L.L.C., a Delaware Limited Liability Co. | ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | ) ) | |
| THE FIRST WESTERN BANK OF STURGIS, a South Dakota Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW PLAINTIFF, and for its cause of actions against Defendant state and allege as follows:

PARTIES

1.

At all times herein mentioned, Plaintiff, Technology Funding Group, LLC (hereinafter referred to as "TFG") was and is a limited liability company organized and existing under the laws of the state of Delaware, authorized to conduct and conducting business in the State of South Dakota.

2.

Defendant The First Western of Sturgis, ( "FWB") is a corporation duly existing under and by virtue of the laws of the state of South Dakota. At all times relevant hereto, John Johnson, ("Johnson"), Calvin McGinnis ("McGinnis"), and Dan Mayer ("Mayer") were employed by FWB with Johnson being the President of FWB's Sturgis office and McGinnis and Mayer being FWB's managing agents in charge of FWB's dealings with Dakota Arms, Inc. ("Dakota Arms").

JURISDICTION

3.

Jurisdiction is proper in this court as there is complete diversity in this action pursuant to 28 U.S.C. § 1332 and the amount in controversy is met.

## FACTS COMMON TO ALL CAUSES OF ACTION

4.

Dakota Arms, Inc., a Minnesota corporation authorized to conduct and conducting business in the state of South Dakota ("Dakota Arms"), at all relevant times was, engaged in the business of manufacturing firearms. Dakota Holdings ("Holdings") was a major creditor of Dakota Arms and had a note receivable from Dakota in the amount of $8,989,891.92. This note was assigned to TFG and TFG thus became a creditor of Dakota.

5.

Dakota Arms filed a voluntary petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court, Minnesota District ("Bankruptcy Court"), *In re: Dakota Arms, Inc., Debtor*, Case No. BKY 06-41315-RJK, on July 6, 2006.

6.

In the course of the Chapter 11 case, Dakota Arms agreed to a sale of its assets and proposed a sale procedure (the "Sale Process") that was approved by the Bankruptcy Court pursuant to its order dated January 10, 2007.

7.

That Dakota Arm's assets, including the right to pursue actions, was purchased by Plaintiff in the bankruptcy proceeding at a Section 363 sale of all assets. Such sale was approved by the Bankruptcy Court on February 28, 2007. Plaintiff therefore acquired all claims, rights and causes of action of Dakota, with exceptions not applicable here, including the right to pursue the actions provided for in this Complaint, and thus Plaintiff TFG has the right to initiate these claims against Defendant. For purposes of this Complaint and Demand for Jury Trial, Plaintiff will be referred to from this point forward as "TFG".

8.

Holdings acquired a major interest in Dakota in 2003 and shortly thereafter, Charles Kokesh, of Holdings became the Chairman of Dakota, and as such committed substantial time and efforts attempting to improve the financial state of Dakota for the benefit of Dakota's shareholder and creditors.

9.

For all relevant periods herein, Dakota Arms conducted all of its banking business with FWB. FWB extended commercial loans to Dakota Arms and represented the same to be secured by general business assets of the company.

10.

During the relationship with Dakota, FWB ceased to have an arms length relationship with Dakota and instead began to exerting actual managerial control over Dakota though acts which included suborning key Dakota employees who were in charge of production of Dakota products, negotiating Dakota contracts, research and developing Dakota products and determining the products Dakota sold and the prices received for the same. These acts were done though Johnson, McGinnis and Mayer.

11.

Unbeknownst to the shareholders or directors of Dakota Arms, FWB began to court potential purchasers for Dakota Arms. FWB again suborned employees to provide FWB with customer list, product list, product pricing and other confidential and sensitive information about Dakota. Without authorization for Dakota, FWB provided this information to competitors of Dakota with the intent of brokering a sale of the business to said competitors. FWB even allowed competitors opportunities to inspect Dakota's facilities after hours so not to be discovered. During these visits, the security cameras were turned off so no other persons, except the suborned employee(s) would know of these visits.

12.

In exchange for assisting FWB obtain and distribute sensitive and confidential information of Dakota, the suborned employees were guarantee that FWB would insist that the new buyers would keep these employees in there current jobs. FWB also promised, and delivered on said promise, that whenever there was a shortfall in cash on hand, FWB would assure that the payroll checks of Dakota would clear and not bounce. This was done despite offers by Dakota key employees to sign personal notes for the additional capital necessary to continue operations.

13.

During this same period Kokesh continued to negotiate financing with FWB. Under the guise of the loan process, FWB had Dakota compile documents of future performance which document were subsequently disclosed to potential buyers solicited by FWB. Dakota did not authorize such disclosures as the same identified potential contracts for products which would give competitors an unfair advantage. FWB approved the financing for Dakota but continued to look for purchasers for the business. During this process, FWB continued to make representations that they were a secured creditor and failed to disclose to Dakota directors and shareholders that they had suborned key Dakota employees.

14.

FWB's acts of suborning employees, attempting the sell Dakota's business, in whole or in part, disclosing confidential and sensitive information of Dakota and holding themselves out as a secured creditor were all done to advance FWB's interest over that of Dakota, it's creditors, officer, directors and shareholders and , in fact worked to the detriment of Dakota, it's creditors, officer, directors and shareholders.

15.

In April or May of 2006, FWB with the assistance of suborned employees had information to show that Dakota was a viable company and had shared this information with potential buyers/competitors. At this juncture FWB devised a plan which they would commence a "friendly foreclosure" the result of which would transfer all of Dakota's assets to FWB for disposition. FWB assured the suborned employees that the operation of Dakota would continue with Trustee oversight until a sale was consummated. These acts were designed to oust the current management of Dakota and eliminate the claims of all creditors, including Holdings, and the equity ownership of all shareholders. A 'friendly foreclosure" was not an act to which FWB had any legal entitlement and was done simply to put FWB ahead of all other creditors and the equity interest of all shareholders.

16.

Management of Dakota discovered the plans of FWB shortly before they physically showed up to the Dakota Arms premises and, in order to stop the wrongful actions of FWB, voted to seek protection under Chapter 11 of the U.S. Bankruptcy Code.

17.

Prior to the forced bankruptcy, FWB failed to disclose to Dakota that FWB had exercise undue control over the company by availing itself to confidential information which was provided to competitors of Dakota, as well as having suborned key employees of Dakota with promises of continued employment should such employees cooperate with the efforts of FWB to usurp the management of the company from its Board of Director and to sell the company in whole or part, all to the benefit of FWB. Even after the filing for bankruptcy protection FWB continued to attempt to suborn employees by stating that they were a secured creditor entitled to inspect Dakota's premises and receive information on the company's operation despite court orders to the contrary.

4

FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty)

18.

Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 17, inclusive.

19.

At all times herein mentioned, FWB, Johnson, McGinnis and Mayer owed the same fiduciary duty to Dakota as directors and officers owe to a corporation because they completely controlled Dakota by virtue of the following:

(a) At the insistence of FWB, the suborned employees as well as McGinnis, Johnson and Mayer, individually and as agents of FWB, authorized to act on behalf of FWB, obtained such complete management and financial control over Dakota that they were able to and did overrule and supplant TFG as director, officer, and shareholder of Dakota, in the operation of Dakota's business; and,

(b) After FWB obtained that control, they became defacto directors and acted in a manner solely in their best interest and not that of the business, its creditors and shareholders.

20.

In addition, a fiduciary relationship arose between the Defendants on one hand, and Dakota on the other, by virtue of the trust and confidence which the Defendants encouraged Dakota to place their trust in the Defendant's integrity and fidelity, and which Dakota did in fact place in the Defendants; by virtue of the disproportionate economic and bargaining positions between FWB and Dakota; by virtue of the advice and assistance provided by FWB and the its agents on which Dakota relied; and by virtue of the possession by FWB and the agents of confidential information about Dakota, including proprietary information and intimate details about Dakota's operations.

21.

The Defendants breached their fiduciary duties to Dakota by its acts and those of its agents, including but not limited to the following:

(a) By failing to disclose and suppressing the fact that the agent were not independent, but rather as agents of FWB maneuvered into control of Dakota for the primary purpose of protecting FWB's interests and gaining financial benefit for FWB;

(b) By acting in total disregard of the wishes and desires of the officers, directors, and shareholders of Dakota, and by taking advantage of its superior position to operate Dakota according to its plan and for its own benefit, thereby overruling and supplanting the officers, directors, and shareholders;

(c) By fraudulently inducing Dakota to provide security proprietary information and access to the business by stating they were a secured creditor to the suborned employees providing such information and access;

(d) By grossly mismanaging the business and assets of Dakota; and,

(e) By otherwise gaining an unfair advantage over Dakota.

22.

As a proximate result of the breaches of fiduciary duty as alleged herein, Plaintiffs have been damaged in an amount in excess of $12 million dollars.

23.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages.

SECOND CAUSE OF ACTION
(Fraud)

24.

Dakota realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 23, inclusive.

25.

At the times herein alleged, FWB failed to reveal and suppressed the following facts from Dakota:

(a) That Defendants had suborned key employees of Dakota with the purpose of gaining unauthorized access to the confidential and proprietary information of Dakota for the purpose of orchestrating a sale of Dakota and providing the information to competitors of Dakota;  and

(b) The Defendants had decided to not reveal it was an unsecured creditor but instead working with the suborned employees to attempt a "friendly foreclosure" and having such employees turn over all assets and control to FWB in exchange for being able to keep their jobs after said foreclosure all the while knowing the they (FWB) possessed no such rights;

26.

The Defendants owed Dakota a duty to disclose the facts the Defendants failed to reveal and suppressed because of FWB's superior knowledge of those facts and FWB's knowledge that the facts were neither known by nor readily accessible to Dakota.

27.

The failures to disclose and suppressions of fact which were known to the Defendants at the times herein mentioned were likely to mislead Dakota and did in fact mislead Dakota in light of the representations and assurances made by the Defendants, as alleged herein.

28.

The failures to disclose and suppressions of fact herein alleged were made with the intent to induce Dakota to act in the manner herein alleged in reliance on.

29.

Dakota, at the time these failures to disclose and suppressions of fact occurred, and at the time it took the actions herein alleged, was ignorant of the existence of the facts which FWB suppressed and failed to disclose. Had Dakota been aware of the existence of these facts, it would not have provided information which FWB used to advance its own interest over those of Dakota, its officers, creditors, directors and shareholders.

30.

As a proximate result of the Defendants' fraud, Plaintiffs have been damaged in an amount in excess of $12 million dollars.

31.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Dakota is therefore entitled to punitive damages.

## THIRD CAUSE OF ACTION
(Tortious Interference with Business Relations or Expectancy)

### 32.

Dakota realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 31, inclusive.

### 33.

A relationship existed between Dakota and its shareholders whereby those shareholders had the right to lawful management and proper corporate governance of Dakota and to appoint officers, directors and managers of their own choosing to operate Dakota independent from wrongful influence. Dakota also had the right to have its affairs managed by competent directors, managers, and officers who would maintain a high degree of undivided loyalty to Dakota.

### 34.

As alleged herein, the Defendants willfully and intentionally interfered with this relationship by allowing its agents, which included suborned employees, to exercise complete dominion and control over Dakota; by preventing Dakota's officers, directors, and managers from managing and operating Dakota; and by preventing Dakota's shareholders from appointing officers, directors, and managers of their own choosing. These acts were patent, continuing, and without justification.

### 35.

As a proximate result of the acts of the Defendants as alleged herein, Dakota has been damaged in an amount in excess of $12 million dollars.

### 36.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Dakota is therefore entitled to punitive damages.

## FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)

### 37.

Plaintiff reincorporates all allegations set forth above in paragraphs 1 through 36 above.

38.

That FWB, in its dealings with officers and employees of Old Dakota and TFG, supplied false, inaccurate, or misleading information.

39.

That FWB supplied such information in the course of transactions and business dealings in which FWB had a financial interest.

40.

That FWB was negligent in obtaining and in communicating the information it obtained from such officers and employees of Old Dakota and TFG.

41.

That FWB supplied information to officers and key employees of Old Dakota and TFG intending them to rely on the same and knowing that such key employees would rely on such information.

42.

That officers and employees of Old Dakota and TFG relied on such information provided by FWB and did so to their detriment and to the detriment of Old Dakota.

43.

That Plaintiff suffered damages as a result of FWB's negligent misrepresentations.

FIFTH CAUSE OF ACTION
(Fraudulent Misrepresentation)

44.

Plaintiff reincorporates all allegations set forth above in paragraphs 1 through 43 above.

45.

That during the bankruptcy proceeding, FWB and its officers contacted high level officers and key employees of Old Dakota and TFG and set up meetings with such employees and other persons not related to Old Dakota or TFG.

46.

That FWB and its officers utilized false pretenses to justify such meetings and failed to provide facts at such meetings and through other communications which FWB knew were material as to whose interests FWB and its officers were representing

47.

That such meetings took place after hours or on weekends at the place of business of Old Dakota.  That other meetings took place at FWB with other members of the FWB and attorneys for Bank.  That other meetings took place in various offices of Old Dakota with other individuals and for various other purposes.

48.

That during such meetings at Old Dakota, FWB officers affirmatively stated to such referenced Old Dakota officers and employees and others the basis or justification for such meetings and on whose behalf FWB was acting.

49.

That FWB officers knew that such statements or representations were not true, inaccurate, or generally misleading when FWB officers made them to employees and others.

50.

That FWB and its officers further utilized such false statements or representations to collect confidential and proprietary financial information from such key officers and employees of Old Dakota or TFG regarding the status of other entities, the status of Old Dakota and its business, as well as other information that would serve FWB interests.

51.

That FWB promised such key officers and employees certain documentation justifying certain meetings but knew that no such documentation existed and that such documentation would never be supplied.

52.

That the conduct and statements identified herein, and other conduct and statements which will be identified throughout discovery, constitute a basis for fraudulent misrepresentation.

53.

That as a result of FWB's conduct provided for herein, Plaintiff suffered damages and is further entitled to an award of punitive damages commensurate with such egregious conduct.

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

54.

Plaintiffs reincorporate all allegations set forth above in paragraphs 1 through 53 above .

55.

That FWB and its officers acted with others including officers and high level employees of Old Dakota and TFG.

56.

That FWB, with others, identified a purpose to be accomplished, including but not limited to the preservation of the FWB's interests and the replacement of Old Dakota ownership prior to the filing of the bankruptcy petition.

57.

That FWB, through his conduct set forth herein and as discovery will provide, was able to provide confidential and other proprietary information to others in order to elevate the bank's interests ahead of those of Old Dakota.

58.

The FWB, and others, committed one or more unlawful acts in the course of such communications and through such dealings.

59.

As a result of the conduct of FWB and others, damages were incurred by Plaintiff.

WHEREFORE, Plaintiff prays judgment against FWB as follows:

1. For compensatory damages, according to proof, in an amount not less than 12 million dollars;

2. For punitive damages.

3. For interest on all sums, according to law;

4. For costs of suit incurred herein, including reasonable attorney fees to the extent allowed by the laws of the State of South Dakota; and,

5. For such other relief as the Court may deem just and proper.

Dated this 13th day of November, 2007.

CLAYBORNE, LOOS & STROMMEN, LLP

Michael K. Sabers
Courtney R. Clayborne
Attorneys for Plaintiff
2834 Jackson Blvd., Suite 201
PO Box 9129
Rapid City, S.D. 57709-9129
(605) 721-1517
(605) 721-1518 (facsimile)